Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN,<br><br>    Plaintiff,<br><br>    v.<br><br>ELON MUSK, TESLA, INC., X CORP., THE ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION, LLC, JARED BIRCHALL, MORGAN STANLEY & COMPANY, LLC, OMAR QAZI, SMICK ENTERPRISES, INC., SINGER CASHMAN, LLP, ADAM S. CASHMAN, ALLISON HUEBERT, ADAM G. MEHES, and ALEX SPIRO,<br><br>    Defendants. | Case No. 3:24-cv-04647-MMC<br><br>**MEMORADUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION AGAINST DEFENDANT ELON MUSK**<br><br>Time:        To Be Determined<br>Date:        To Be Determined<br>Courtroom:   7<br><br>Judge: Hon. Maxine M. Chesney<br>State Action Filed: June 12, 2024<br>Removed: July 31, 2024<br>FAC Filed: August 28, 2024 |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.   STATEMENT OF ISSUES ............................................................................................... 2

III.   FACTUAL BACKGROUND ............................................................................................ 2

IV.   ARGUMENT ..................................................................................................................... 2

      A.   Plaintiff Has a Substantial Likelihood of Success On His Claims ......................... 2

      B.   Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction ............... 3

      C.   The Balance of Equities Tips Sharply in Plaintiff's Favor ..................................... 4

      D.   Injunctive Relief Would Clearly Serve the Public Interest .................................... 4

      E.   Plaintiff Should Not Be Required To Provide Security Prior To The Issuance of a Temporary Restraining Order ................................................................................. 5

V.   CONCLUSION .................................................................................................................. 5

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127, 1138 (9th Cir. 2011) ..................................................................................... 4

*Friends of the Earth v. Brinegar,*
   518 F.2d 322, 323 (9th Cir. 1975) ......................................................................................... 5

*Natural Resources Defense Council v. Morton,*
   337 F.Supp. 167 (D.C.D.C. 1971) ........................................................................................ 5

*People ex rel. Van De Kamp v. Tahoe Regional Plan,*
   766 F. 2d 1319, 1325 (9th Cir. 1985) ................................................................................... 5

*United States v. Garcia,*
   719 F.2d 99, 102 (5th Cir. 1983) ........................................................................................... 2

**Statutes**

18 U.S.C. § 1964(c) ..................................................................................................................... 4

52 U.S.C. § 10307(c) ............................................................................................................ 1, 2, 5

## I. INTRODUCTION

In addition to and in parallel with investigations of his companies, Defendant Elon Musk is personally being criminally investigated by the Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("USDOJ"). It is likely that he will be indicted, but probably not until after the 2024 presidential election on November 5, 2024, and probably only if Vice-President Kamala Harris wins. Defendant Musk recently admitted in public, in an interview with Russian propagandist Tucker Carlson, that he worries about how long his "prison sentence is gonna be" in the event of a Harris victory at the polls. *See* October 7, 2024 video interview of Elon Musk by Tucker Carlson at https://x.com/TuckerCarlson/status/1843375397024485778 ("I'm fucked. If [Trump] loses, I'm fucked. Yeah, I'm like, how long do you think my prison sentence is gonna be?") For this reason, in recent months, Defendant Musk has devoted an astonishing amount of his time and his virtually infinite financial resources to securing the re-election of Donald Trump, even going so far as to temporarily re-locate to Pennsylvania, a key Electoral College swing state.

As of October 19, 2024, Defendant Musk has resorted to strategies from his PayPal days. Instead of trying to buy new users by overtly paying them to sign up for a new service, however, Defendant Musk is now trying to buy votes by offering $1 million per day through Election Day to allegedly randomly chosen individuals in swing states who have signed a petition that he has backed. In effect, Defendant Musk has constructed an illegal lottery system to swing the presidential election in violation of 52 U.S.C. § 10307(c).

If Defendant Musk is permitted to continually violate federal law and swing the election, Donald Trump, a convicted felon, will become President of the United States, and Defendant Musk will be able to secure a pardon from Mr. Trump for his crimes. In addition, Defendant Musk will become part of the United States government, putting Plaintiff in physical peril as an individual who has been one of Defendant Musk's most vocal critics.

There can be no question that what Defendant Musk is doing is illegal. "The bribe may be anything having monetary value, including cash, liquor, lottery chances, and welfare benefits

such as food stamps." FEDERAL PROSECUTION OF ELECTION OFFENSES, EIGHTH EDITION, at 44, citing *United States v. Garcia*, 719 F.2d 99, 102 (5th Cir. 1983).

## II. STATEMENT OF ISSUES

At issue is whether Defendant Musk should be enjoined from further violations of 52 U.S.C. § 10307(c).

## III. FACTUAL BACKGROUND

*See* FAC ¶¶ 37-52.  On October 19, 2024, Defendant Musk promised a crowd in Harrisburg, Pennsylvania, "We're going to be awarding a million dollars [] randomly to people who have signed the petition every day from now until the election."

## IV. ARGUMENT

### A. Plaintiff Has a Substantial Likelihood of Success On His Claims

Plaintiff's claims are based in part on the Tesla Files, gigabytes of internal documents that were obtained from one or more former employees of Tesla, Inc.  Other aspects of Plaintiff's claims are based on discovery documents from other litigation against certain of Defendants which have already been publicly disclosed.  It is thus difficult for Defendants to deny the substance of Plaintiff's arguments, as many facts have already been established by their own words and deeds.  To the extent any factual issues remain, Plaintiff expects discovery in this action to be necessary and beneficial in resolving them.  The open questions surround various legal technicalities that Defendants have fabricated and/or embellished in the hopes of escaping liability for their unlawful, and in some cases criminal, acts.

Plaintiff's RICO claims (Counts I-III) are based on a detailed accounting of how Defendant Musk has established a criminal RICO enterprise, the Atlanteca Enterprise, that encompasses dozens of legal entities established to defraud the general public and stash the resulting unlawfully obtained funds.  Defendant Musk treats all of his companies as one superlative entity and exchanges resources between companies freely, regardless of legality.  The Atlanteca Enterprise is coordinated through a domain name, atlanteca.com, that does not appear to belong to any of Defendant Musk's known companies or formal organizations.

Plaintiff's securities claims (Counts IV-VI) are not subject to the heightened pleading standard of the Private Litigation Securities Reform Act of 1995 ("PSLRA") in this case. Therefore, even though Plaintiff's federal securities claims were previously dismissed, the state law claims here are different, alleged under a different and more lenient pleading standard, and based on different, newly pled facts that Plaintiff was improperly prohibited from pleading before. Plaintiff's losses were directly caused by Defendants' fraudulent representations which were intended to artificially inflate Defendant Tesla's stock price, and in fact, did so.

The remaining claims are mostly state law claims grounded in facts that Defendants cannot deny. Plaintiff has suffered extreme harassment at the hands of Defendants for years, akin to corporate-sponsored harassment carried out by eBay, Inc. against that company's independent and moderate critics, which was ultimately cause for criminal prosecution at a $3 million penalty. Simultaneously, Plaintiff has been forced to rely on Defendants' fraudulent claims of Tesla vehicles' safety when using public roads in California.

Plaintiff is likely to prevail on his claims against Defendant Omar Qazi and Smick Enterprises, Inc. especially because neither has appeared to answer or refute them. Defendant Qazi has been attempting to evade service of process for months, and Defendant Smick, despite being served, has failed to respond to either the Complaint or the First Amended Complaint.

**B.     Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction**

Although the USDOJ would ordinarily enforce federal laws surrounding the upcoming presidential election, the USDOJ has been conspicuously absent from matters involving Defendant Musk, who owns a federal defense contractor and major National Aeronautics and Space Administration contractor, Space Exploration Technologies Corporation ("SpaceX"). In sum, Plaintiff cannot count on the inept, politically hamstrung, and years-late USDOJ to do its job now, especially in the sixteen days remaining before November 5, 2024.

Therefore, without an injunction from this Court, Plaintiff will suffer irreparable harm. Not only would Defendant Musk be permitted to wield his unlawfully obtained wealth to

interfere in the 2024 presidential election,[1] but should Donald Trump be elected, Plaintiff would undoubtedly be targeted for retribution.  In addition, the unlawful election of Mr. Trump would likely foreclose the possibility of Defendant Musk being indicted and convicted of securities fraud, which would materially affect Plaintiff's rights insofar as his RICO claims are concerned. *See* 18 U.S.C. § 1964(c) ("…except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.  The exception contained in the preceding sentence ***does not apply to an action against any person that is criminally convicted in connection with the fraud***…" (emphasis added)).

    **C.**    **The Balance of Equities Tips Sharply in Plaintiff's Favor**

The harm to Plaintiff from allowing Defendant Musk to exist above the law would be substantial.  It could conceivably lead to a situation in which Defendant Musk is directly able to influence the course of future federal legislation, deliberately undermining his company's regulators—which he is already doing through the federal courts via frivolous litigation—and putting his critics at substantial risk.  The harm to Defendant Musk from being prohibited from violating federal law is nil.  The balance of harms therefore favors the issuance of equitable relief and falls completely in Plaintiff's favor.

    **D.**    **Injunctive Relief Would Clearly Serve the Public Interest**

"The public interest analysis for the issuance of a [TRO] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1138 (9th Cir. 2011).  The acts giving rise to this motion are not based on a commercial dispute, nor a petty

---

[1] It should be noted that like Mr. Trump, Defendant Musk behaves exactly as an asset of the Russian Federation's intelligence services would behave.  Both have spoken directly with Vladimir Putin.  Defendant Musk has repeated Russian talking points about the war in Ukraine, both from his own Twitter account and the Twitter accounts of those recently identified by USDOJ as having taken funding from Russian-state-backed entity Russia Today; interfered with the Ukrainian military's ability to use SpaceX's Starlink satellite internet service on the battlefield; granted interviews to fellow Russian intelligence assets such as Tucker Carlson; and has published pro-Russian propaganda on countless occasions.

one. Defendant Musk's actions in setting up a $1 million-per-day lottery to buy votes in one of the most pivotal elections in American history are a frontal assault on democracy and the public interest. There can be no question that injunctive relief is appropriate on a public interest basis.

### E. Plaintiff Should Not Be Required To Provide Security Prior To The Issuance of a Temporary Restraining Order

There is no need for Plaintiff to provide a security here, especially given that Plaintiff is proceeding *pro se* in this litigation. "The district court also properly exercised its discretion to allow the League to Save Lake Tahoe to proceed without posting a bond. The court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review. *See Natural Resources Defense Council v. Morton*, 337 F.Supp. 167 (D.C.D.C. 1971); *cf. Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975) (injunction pending appeal). The League, a non-profit environmental group, indicates that it is unable to post a substantial bond." *People ex rel. Van De Kamp v. Tahoe Regional Plan*, 766 F. 2d 1319, 1325 (9th Cir. 1985).

## V. CONCLUSION

Plaintiff has satisfied the requirements for a Temporary Restraining Order and permanent injunction against Defendant Elon Musk to be issued prohibiting further violations of 52 U.S.C. § 10307(c) and any related statutes.

Dated: October 19, 2024                Respectfully submitted,

*[signature: Aaron Greenspan]*

Aaron Greenspan
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org