Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

AARON GREENSPAN,

    Plaintiff,

       v.

ELON MUSK, TESLA, INC., X CORP., THE
ELON MUSK REVOCABLE TRUST DATED
JULY 22, 2003, EXCESSION, LLC, JARED
BIRCHALL, MORGAN STANLEY &
COMPANY, LLC, OMAR QAZI, SMICK
ENTERPRISES, INC., SINGER CASHMAN,
LLP, ADAM S. CASHMAN, ALLISON
HUEBERT, ADAM G. MEHES, and ALEX
SPIRO,

    Defendants.

Case No. 3:24-cv-04647-MMC

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
STAY DISCOVERY PENDING
RULING ON MOTION TO
DISMISS**

Time:         9:00 A.M.
Date:         January 17, 2025
Courtroom:   7

Judge: Hon. Maxine M. Chesney
State Action Filed: June 12, 2024
Removed: July 31, 2024
FAC Filed: August 28, 2024

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF ISSUES ................................................................................... 3

III.    FACTUAL BACKGROUND ................................................................................ 3

IV.     ARGUMENT ........................................................................................................ 4

      A.      Moving Defendants Fail To Articulate Any Genuine Reason Why They Should Not Have To Engage In Discovery, While Admitting That They Are Obligated To Do So Until Their Motion Is Granted .................. 4

      B.      A Stay of Discovery Is Not Merited ......................................................... 8

      C.      Moving Defendants' Motions To Dismiss Raise Factual Issues That Must Be Addressed By Discovery ........................................................... 9

      D.      Moving Defendants Have Failed To Comply With Their Discovery Obligations While This Motion Is Pending In Violation of Federal Rules of Civil Procedure 26 and 37 .................................................................. 11

V.      CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Agrawal et al v. Musk et al*,
    Case No. 3:24-cv-01304-MMC (N.D. Cal. November 1, 2024) ........................................ 8, 11

*cc.mexicano.us, LLC v. Aero II Aviation, Inc.*,
    Case No. 2:14-cv-00108-JCM-NJK (D. Nevada July 18, 2014) ............................................ 10

*Cheney v. U.S. Dist. Ct.*,
    542 U.S. 367, 384 (2004) ...................................................................................... 6

*Greenspan v. Qazi et al*,
    Case No. 3:20-cv-03426-JD (N.D. Cal. *filed* May 20, 2020) .................................... 2

*In re Grand Jury Investigation*,
    974 F.2d 1068, 1070 (9th Cir. 1992) ........................................................................ 6

*In re Grand Jury Proceedings*,
    87 F.3d 377, 379 (9th Cir. 1996) ............................................................................ 6

*In the Matter of Fischel*,
    557 F.2d 209, 212 (9th Cir. 1977) .......................................................................... 6

*Kor Media Group, LLC v. Green*,
    294 F.R.D. 579, 581 (D. Nev. 2013) ...................................................................... 10

*Pauly v. Becker*,
    Case No. 3:23-cv-03108-JD (N.D. Cal. February 14, 2024) .................................... 4

*Pearl v. Coinbase Global, Inc.*,
    Case No. 3:22-cv-03561-MMC (N.D. Cal. June 17, 2024) ........................................7

*Rasella v. Musk*,
    Case No. 1:22-cv-03026-ALC-GWG (N.D. Cal. *filed* April 12, 2022) ....................5

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729, 738 (9th Cir. 1987) ..........................................................................8

*United States of America v. Jacobsen*,
    Case No. 3:15-cr-00518-MMC, ECF No. 84 (N.D. Cal. June 20, 2017) ..................6

*United States v. Martin*,
    278 F.3d 988, 1000 (9th Cir. 2002) .........................................................................6

*United States v. Nixon*,
    418 U.S. 683, 710 (1974) .........................................................................................6

*United States v. Richey*,
    632 F.3d 559, 567 (9th Cir. 2011) ...........................................................................6

*United States v. Zolin*,
    491 U.S. 554, 562–63 (1989) ...................................................................................6

*Upjohn Co. v. United States*,
    449 U.S. 383, 390 (1981) .........................................................................................6

**<u>Statutes</u>**

15 U.S.C. § 78u-4(a)(1) .....................................................................................................4

Prison Litigation Reform Act..............................................................................................4

**<u>Rules</u>**

Civil Local Rule 37-1(a) ..............................................................................................4, 11

Federal Rule of Civil Procedure 11 ................................................................................11

Federal Rule of Civil Procedure 26 ................................................................................11

Federal Rule of Civil Procedure 37 ..........................................................................4, 11

1

## I.    INTRODUCTION

2

By leveraging the serial fraudulent acts described in Plaintiff's First Amended Complaint

3
("FAC") and proposed Second Amended Complaint ("SAC"), and having now re-invested a

4
portion of the multi-billion-dollar proceeds from those acts to successfully purchase the 2024

5
presidential election—effectively, the entire United States of America—Defendant Elon Musk

6
has elevated himself to heights unprecedented in this country's, and arguably human, history.

7
He is by far the richest known person on Earth, now worth over $310 billion, and aside from the

8
President, is now the most powerful person in the United States, credibly joking about moving

9
into the Oval Office himself and referred to as the incoming "Co-President" on at least one major

10
news network, despite being a foreign-born illegal immigrant who admitted in 2005 that he had

11
"no legal right to stay in the country."[1]

12
Just following orders, Defendant Musk's skilled attorneys accuse Plaintiff of "clogg[ing]

13
the courts with thousands of pages of pleadings and 'emergency' motions…"[2]  Such false and

14
misleading rhetoric is just the latest round of barbs in a smear campaign that, without this

15
Court's intervention, will never end.  As required, Plaintiff has followed the Federal Rules of

16
Civil Procedure ("Rules"), Civil Local Rules, and the various statutes which govern pleadings in

17
federal court.  Defendants have not.[3]  Plaintiff has properly filed emergency motions about the

18
recent urgent issue of Defendant Musk's "October surprise": his illegal interference in the 2024

19
presidential election, which Musk himself has now admitted in the Philadelphia Court of

20
Common Pleas did, in fact, constitute an "emergency."  On November 1, 2024, Musk filed his

21
own "Emergency Motion To Quash Notice To Attend" in an attempt to evade contempt of court

22
sanctions for failing to appear at an emergency court hearing.

23

24

25
[1] *See* https://www.plainsite.org/dockets/download.html?id=255379935&z=de584558, page 644.

26
[2] Defendant Musk has been sued nearly 150 times in his personal capacity.  His Atlanteca Enterprise companies have been sued nearly 4,000 times.  Defendant Musk has "clogged the courts" more than almost anyone alive, except perhaps Donald Trump.

27
[3] *See*, *e.g.*, FAC ¶ 52.  *See also* ECF No. 38, directing Defendants to file required courtesy copies.  *See also* Argument Section D, *infra*, regarding additional Rule violations.

28

1    Defendants' litany of bogus reasons as to why this case is doomed is not compelling.
2    Plaintiff's claims have been timely filed.  Defendants cannot and do not identify a single instance
3    of delay because there has been no delay on Plaintiff's part, and they already admit that this
4    lawsuit relates back to its predecessor action, *Greenspan v. Qazi et al*, Case No. 3:20-cv-03426-
5    JD (N.D. Cal. *filed* May 20, 2020) ("*Greenspan I*").  The claims are not barred by *res judicata*,
6    which requires a final judgment on pleadings to take effect, or by "issue preclusion."  The
7    PSLRA does not preclude Plaintiff's RICO claims, which are based on harms aside from
8    securities fraud.  Defendants have not identified a single "false" or "immaterial" statement in the
9    FAC or proposed SAC.  They simply adhere to the disinformation tactics perfected by Musk's
10   close associate, Russian President Vladimir Putin, who formerly ran the Russian Federal Security
11   Service (FSB, formerly KGB).  With no regard for their ethical obligations or the rule of law,
12   they repeat the same lies over and over again, because eventually, people tend to believe what
13   they hear.  The Court should not fall victim to this basic but sadly effective tactic.

14       To shield the most explosive information pertaining to Plaintiff's allegations from ever
15   becoming public knowledge, which might undermine Musk's credibility as a purported genius
16   entrepreneur, Defendants now request a discovery stay, suggesting that discovery would be a
17   "waste."  This is not so.  Discovery in this action will reveal the few crucial missing pieces of
18   information underlying Plaintiff's claims: how Defendant Musk and his co-Defendant cronies
19   conspired to A) construct false narratives around "Autopilot" and "Full Self-Driving"
20   technologies that were not ready for production, did not work as advertised, and posed a danger
21   to the public; B) attack their critics; C) commit accounting fraud; and D) artificially inflate the
22   price of Tesla stock from 2018-2020 until the company was worth $1.2 trillion by 2021.  This
23   information is the key to Musk's financial success.  Discovery in this action is necessary to
24   obtain it because these matters are not at issue in any other pending lawsuit, Defendant Musk's
25   personal communications on these matters were not in the Tesla Files, and they are not
26   obtainable from any other source.
27
28

Defendants argue out of one side of their mouths that Plaintiff has a unique "obsession" with Defendant Musk, but out of the other side decry the transparency initiative Plaintiff founded, PlainSite, which tracks information on "just over 30" billionaires aside from Musk. In effect, they attempt to suggest that a *data journalist* actually *journaling data* fundamental to democracy's survival ("meticulously posting docket entries from cases") in this country somehow constitutes a pattern of unusual activity. For someone who shouts at any passing judge about his First Amendment rights, Defendant Musk seems to have virtually no understanding of how the First Amendment works, and apparently believes that his $310 billion in riches entitles him to exclusive ownership over the First Amendment itself.

Under Defendant Musk's illicitly-obtained shadow rule, American democracy will perish. Rather than acquiesce, this Court should force Musk to explain how he cheated Plaintiff (among others) and pulled off what amounts to the most nefarious scheme in the history of modern civilization: the unconstitutional purchase and transfer of the Presidency to one or more agents of the Russian Federation, entirely based upon the aforementioned fraudulent and otherwise unlawful acts as pled in the FAC. Plaintiff is entitled to discovery on his claims.

## II. STATEMENT OF ISSUES

The issue to be decided is whether or not discovery should be stayed in this action pending motions to dismiss filed by only certain defendants that cannot be dispositive of the entire case and which will not necessarily be granted.

## III. FACTUAL BACKGROUND

Plaintiff has never had the opportunity to conduct discovery in this action or its predecessor action, *Greenspan I*. The federal securities claims in *Greenspan I*, informed only by public records and news articles, were improperly subjected to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which, aside from its empirically impossible pleading standard for *pro se* litigants, mandates an automatic discovery stay in class-action lawsuits filed by attorneys. Plaintiff argued that his *individual* action filed by a *non-attorney* did not qualify for the automatic PSLRA discovery stay, but Judge James Donato ignored these arguments until

after his dismissal of the securities claims was already on appeal before the United States Court of Appeals for the Ninth Circuit. *See Greenspan I* ECF Nos. 60, 63. On February 14, 2024, after appellate briefing was complete, Judge Donato ruled in a separate case that, "The PSLRA applies only to private actions brought as plaintiff class actions, 15 U.S.C. § 78u-4(a)(1), and does not apply to Pauly's individual action." *Pauly v. Becker*, Case No. 3:23-cv-03108-JD (N.D. Cal. February 14, 2024). Thus, Judge Donato admitted that the automatic PSLRA discovery stay in *Greenspan I* should never have been imposed, and that the appeal—argued largely on the grounds that the PSLRA did not apply—never should have been necessary. Ultimately, Plaintiff's Ninth Circuit panel, which had originally requested oral argument, cancelled oral argument at the last minute and rubber-stamped a staff attorney decision copied and pasted from the briefs of Defendants Musk and Tesla, which both likely in error referred to the **PLRA**—the Prison Litigation Reform Act, which had absolutely no bearing on the case. Now, with state law claims additionally informed by Tesla's leaked internal documents that cannot be construed as being shielded by the PSLRA, Moving Defendants scramble to find any excuse they can to forestall the discovery obligations they managed to successfully evade for four years, and to the extent that they have failed to do so, Moving Defendants simply ignore them.

## IV.    ARGUMENT

### A.    Moving Defendants Fail To Articulate Any Genuine Reason Why They Should Not Have To Engage In Discovery, While Admitting That They Are Obligated To Do So Until Their Motion Is Granted

Moving Defendants admit that they are required to participate in discovery unless and until the instant motion is granted, even admitting that initial disclosures were "due on October 28, 2024." Plaintiff served his initial closures on Defendants. Defendants refused to comply and served nothing in return.

Since Moving Defendants, led by Defendant Musk, do not believe in the rule of law, they further failed to respond to Plaintiff's subsequent e-mail inquiring about when to hold a conference under Federal Rule of Civil Procedure 37 and Civil Local Rule 37-1(a) to discuss their discovery failure. Since they have nothing but contempt for courts and laws, they see no

need to wait for this Court to rule on their motion.  Defendant Musk's whim is the only directive they follow.

The limited discovery requests that Plaintiff has served on Defendants—no requests for admission and no interrogatories, just ten (10) document requests addressed to Defendant Musk and nine (9) document requests addressed to Defendant Morgan Stanley & Company, LLC—are not "grossly overbroad," nor are they "irrelevant on their face."  Defendants must deliberately misconstrue the words on the page to attempt to substantiate the idea that the requests are too broad.  They point out that the word "shorts" has a double meaning, referring to a type of investor and a type of clothing, but even the double meaning is relevant to this case because in 2020, Defendant Musk decreed that Defendant Tesla should start selling "short shorts," the clothing item (imprinted with Tesla vehicle model names to make a joke), to ridicule short sellers, the type of investor.  To the extent that Defendant Musk was discussing short sellers, the investors, because of his fixation with "shorts" of all kinds in 2020, those communications are core to Plaintiff's claims.

Request for Production No. 8 addressed to Defendant Musk is not simply for "all documents" as Defendants falsely suggest.  The request is limited to one person's documents and limited further by media type: "e-mails, text messages, Signal Messages, or Twitter direct messages."  Then, it is limited a third time, not to a "nearly eight-year period," but to roughly two and a half years, "from June 1, 2018 through December 31, 2020."  Defendants deliberately ignore these limitations to make Plaintiff's request seem all-encompassing, which it is not.

Request for Production No. 7 addressed to Defendant Musk is proper in its scope. Defendant Birchall is an integral part of Defendant Musk's frauds and his communications over the entire timeframe with the other Defendants are absolutely material to this case.  Furthermore, discovery documents from *Rasella v. Musk* already demonstrate that there exist responsive documents involving Defendant Birchall that would shed light on Plaintiff's claims.

Request for Production No. 9 does not address "privileged materials" because attorney-client and work product privileges do not protect fraud or criminal acts under the crime-fraud

exception; accordingly, any privilege has been waived.  In *United States of America v. Jacobsen*,

Case No. 3:15-cr-00518-MMC, this Court adopted the arguments of the United States

Department of Justice as set forth below:

> "The attorney-client privilege protects both communications from an attorney to a
> client that constitute professional legal advice as well as communications from the
> client to the attorney to obtain legal advice.  *Upjohn Co. v. United States*, 449
> U.S. 383, 390 (1981).  However, '[t]he privilege only protects disclosure of
> communications; it does not protect disclosure of the underlying facts by those
> who communicated with the attorney.'  *Id[.]* at 395; *see also United States v.
> Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (documents contained in attorney's file
> that were not 'communications' were not privileged).  The claimant of the
> privilege bears the burden of proving that each communication he seeks to shield
> is entitled to protection.  *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir.
> 2002) (explaining that the proponent of privilege must 'identify specific
> communications and the grounds supporting the privilege as to each piece of
> evidence'); *see also In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir.
> 1992); *In the Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977).
>
> The privilege is to be narrowly construed.  *Fischel*, 557 F.2d at 212 n.4; *Cheney v.
> U.S. Dist. Ct.*, 542 U.S. 367, 384 (2004) ('[P]rivilege claims that shield
> information from a . . . criminal trial are not to be `expansively construed, for they
> are in derogation of the search for truth.`' (quoting *United States v. Nixon*, 418
> U.S. 683, 710 (1974))).
>
> The crime-fraud exception is a well-recognized exception to attorney-client
> privilege, and is based on the principle that the privilege does not apply where
> attorney-client communications relate, 'not to prior wrongdoing, but to future
> wrongdoing.'  *United States v. Zolin*, 491 U.S. 554, 562–63 (1989).  'It is the
> purpose of the crime-fraud exception to the attorney-client privilege to assure that
> the seal of secrecy between lawyer and client does not extend to communications
> made for the purpose of getting advice for the commission of a fraud or crime.'
> *Id.* at 563 (internal quotations omitted).  The exception applies even where the
> attorney is unaware that his advice may be used for an illegal purpose 'and takes
> no affirmative step that actually furthers it.'  *In re Grand Jury Proceedings*, 87
> F.3d 377, 379 (9th Cir. 1996).  Rather, 'it is the client's knowledge and intentions
> that are of paramount concern.'  *Id.* 27 at 381–82."

*United States of America v. Jacobsen*, Case No. 3:15-cr-00518-MMC, ECF No. 84 (N.D. Cal.

June 20, 2017).  Moving Defendants do not even attempt to prove that any privilege should

apply.  Given the fraudulent and criminal nature of the acts at issue here, none does.

As for Requests for Production Nos. 4-7 directed to Morgan Stanley, Defendants

completely misrepresent their contents and omit the text of the requests (reprinted below)

1    because they do not want to admit that Morgan Stanley employees Adam Jonas, Kate Claassen,

2    Jon Neuhaus and Kyle Corcoran were involved in carrying out fraudulent and criminal activity

3    on behalf of the bank and other Defendants.  Those Requests are as follows:

4            "**REQUEST FOR PRODUCTION NO. 4**

5                All DOCUMENTS to or from Morgan Stanley employee Adam Jonas that

6            contain the terms "Tesla" or "Musk".

7            **REQUEST FOR PRODUCTION NO. 5**

8                All DOCUMENTS to or from Morgan Stanley employee Kate Claassen

9            concerning TESLA, ELON MUSK, or SHORT SELLERS.

10            **REQUEST FOR PRODUCTION NO. 6**

11                All DOCUMENTS to or from Morgan Stanley employee Jon Neuhaus

12            concerning TESLA, ELON MUSK, or SHORT SELLERS.

13            **REQUEST FOR PRODUCTION NO. 7**

14                All DOCUMENTS to or from former Morgan Stanley employee Kyle

15            Corcoran concerning TESLA, ELON MUSK, or SHORT SELLERS."

16            Obviously, the description of the above requests in the instant motion is objectively false;

17    these requests do not ask Morgan Stanley to provide "all documents to or from Morgan Stanley

18    employees regarding Musk, Tesla, or any short seller of any stock, anywhere in the world."

19    Motion at 7.  Morgan Stanley claims to have "over 80,000 employees" "anywhere in the world."[4]

20    Plaintiff's discovery requests thus far inquire about documents pertaining to specific topics

21    material to this action, within a specific, limited timeframe, involving only four (4) employees,

22    who all happen to be based in the United States.  This is not "overly broad."

23            Moving Defendants have nothing else to offer.  They have no legitimate reason as to why

24    they should not be required to participate in the discovery process.  Even if the Court did view

25    Plaintiff's limited requests thus far as somehow burdensome, "burden is not part of the test."

26    *Pearl v. Coinbase Global, Inc.*, Case No. 3:22-cv-03561-MMC (N.D. Cal. June 17, 2024).

27

28    [4] *See* https://www.morganstanley.com/about-us/history.

1

## B.    A Stay of Discovery Is Not Merited

Moving Defendants' motions to dismiss are not "potentially dispositive of the entire case," nor are they "dispositive on the issue at which discovery is directed," so by the very test they claim courts use to assess the appropriateness of discovery stays, their own motion fails. Motion at 9.  They conveniently forget that Defendants Qazi and Smick have not appeared to defend themselves in this action.  Smick is in default; Qazi has a week left to respond, even after first learning of this action in June, five months ago.  Even were all claims against Moving Defendants dismissed, this case would still continue against Defendants Qazi and Smick, who were involved in the same frauds and crimes targeted at short sellers such as Plaintiff.

Moving Defendants cite one appellate case, *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987), to justify their request to stay discovery, but that case bases its reasoning on expense.  "In antitrust cases this procedure [of staying discovery] especially makes sense because the costs of discovery in such actions are prohibitive."  *Id.*  This is not an antitrust case and the costs of responding to fewer than 20 requests for document production targeted to a handful of employees are not prohibitive, especially for one defendant whose crimes have bestowed on him the largest fortune ever accumulated in this nation (at the cost of responsible investors such as Plaintiff), and another defendant which is itself an investment bank.

Moving Defendants are confident that their motions to dismiss will dispose of the entire action, but their confidence is misplaced.  On November 1, 2024, this Court denied a motion to dismiss filed by Defendant Musk in a separate case in which Plaintiff and PlainSite were even cited in the Complaint and First Amended Complaint.  *Agrawal et al v. Musk et al*, Case No. 3:24-cv-01304-MMC (N.D. Cal. November 1, 2024).  Defendant Musk is not always right.  In this action, Plaintiff has since lodged his opposition to the motions to dismiss, ECF No. 106, as well as a proposed SAC, ECF No. 105-7.[5]  Since Moving Defendants were in such a rush to prevent discovery from becoming an issue, they did not address the proposed SAC at all.

---

[5] The proposed SAC is redacted on one page to obscure Defendant Musk's current home address. A version of ECF No. 106 correcting minor errors is being filed simultaneous with this brief.

1

2

### C.    Moving Defendants' Motions To Dismiss Raise Factual Issues That Must Be Addressed By Discovery

3

4

5

6

7

8

9

10

11

12

13

On page 21 of the Musk Defendants' combined motion to dismiss and special motion to strike under the California Anti-SLAPP statute, ECF No. 82, Moving Defendants argue that Plaintiff's negligent infliction of emotional distress claim fails because actually, they committed "intentional actions" against Plaintiff. This alone is an admission that discovery is required to fully develop Plaintiff's claims. Defendants also repeatedly argue that Plaintiff has not been specific enough: "fails to offer any support and one citation in fact provides evidence that tape is *not part* of the manufacturing process" (ECF No. 82 at 7), "still fails to identify any specific, actionable misconduct by anyone" (*Id*. at 7), "fails to show (or even claim) that any of the alleged manipulative transactions occurred in California" (*Id*. at 11), "common-law fraud, which Greenspan fails to allege with the requisite particularity" (*Id*. at 18), etc. The established way to cure alleged defects such as these is to exchange discovery about the associated facts.

14

15

16

There are two issues Plaintiff believes need to be clarified most, both of which would be addressed by discovery, especially since Plaintiff could still update the proposed SAC with new facts given that it has not yet been formally entered on the record as an amended complaint:

17

18

19

20

21

22

23

24

25

26

27

28

a)  The first is the extent to which Defendants Musk, Tesla and Spiro coordinated with Defendants Qazi and Smick, as well as "Hardcore Litigation Department" Defendants Singer Cashman, LLP, Cashman, Huebert, and Mehes on an apparently "intentional" basis to harass and otherwise harm Plaintiff in retribution for his journalistic work on their activities. For example, FAC ¶ 355 already includes a *portion* of an e-mail exchange between Musk, Qazi, and former Twitter CEO Jack Dorsey, the authenticity of which Defendants do not dispute and never have. Plaintiff should be permitted to view the entire exchange and any related documents and allege claims on the basis of complete knowledge. Plaintiff should also be able to view Defendant Musk's directives to his "Hardcore Litigation Department," since it appears that they were ordered to file vexatious litigation in direct violation of the California Rules of Professional Conduct and similar Rules in Texas.

1

2
      b)   The second issue is the extent to which Defendants Musk, Tesla, Birchall, Morgan

3
           Stanley, Musk Trust, Excession and/or Spiro coordinated, simultaneous with their

4
           harassment efforts, to artificially increase the price of Tesla's stock, and exactly

5
           which trading and obfuscation mechanisms they used to accomplish that feat.  In the

6
           case of Twitter, as alleged in FAC ¶ 271, Defendant Birchall relied on Morgan

7
           Stanley engaging in illegal trading activity kept hidden from Morgan Stanley's own

8
           compliance department to carry out Defendant Musk's fraudulent acts.  Plaintiff

9
           believes that this was not the first time Defendants engaged in such a scheme, and

10
           that it had actually happened previously with regard to Tesla shares, except in the

11
           opposite direction (making Tesla's stock price go up, as opposed to their unlawful

12
           attempts to keep Twitter's stock price down).  Defendant Birchall is already

13
           associated with a number of other schemes executed on behalf of Defendant Musk,

14
           such as his using the alias "James Brickhouse" to pay an overseas convicted felon for

15
           disinformation on Thai cave expert Vernon Unsworth, which turned out to be

           completely false, in 2018.

16
There are additional issues that discovery would shed light on, including Tesla's various

17
accounting fraud techniques and its decisions to withhold incriminating evidence from

18
regulators, such as the United States Securities and Exchange Commission.

19
      To the extent that the Court wishes to take a "preliminary peek" at the non-dispositive

20
motions to dismiss, the overwhelming factual weight of the FAC and proposed SAC make any

21
stay of discovery inappropriate.  "With respect to the preliminary peek, the Court applies

22
different standards depending on the type of dispositive motion brought.  Where the underlying

23
motion to dismiss is brought pursuant to Rule 12(b)(6) for failure to state a claim, a stay is proper

24
when the Court is *convinced* that the plaintiff will be unable to state a claim.  *See Kor*

25
*Media*, 294 F.R.D. at 583.  This is a very rigorous standard that is only met when there is no

26
question that the dispositive motion will be granted" (emphasis in original).  *cc.mexicano.us,*

27
*LLC v. Aero II Aviation, Inc.*, Case No. 2:14-cv-00108-JCM-NJK (D. Nevada July 18, 2014).

28

**D.    Moving Defendants Have Failed To Comply With Their Discovery Obligations While This Motion Is Pending In Violation of Federal Rules of Civil Procedure 26 and 37**

Moving Defendants' bad faith is on full display.  As part of a longstanding pattern of filing false and misleading argument before this Court and others, they have made several arguments sanctionable under Federal Rule of Civil Procedure 11: that Plaintiff's "emergency" filings were improper (they were not; Musk himself made "emergency" filings about the same issue after being threatened with contempt of court in Philadelphia); that the pending motions to dismiss are dispositive of this entire case (they are not, as two defendants did not join in their motions); that Plaintiff had made discovery requests of over 80,000 Morgan Stanley employees (Plaintiff did not); that Plaintiff previously alleged that Defendant Musk was colluding with ex-CIA and NSA "officials" (Plaintiff did not); and that Plaintiff previously alleged that Defendant Musk had been in *personal* contact with drug kingpins Pablo Escobar and "El Chapo" Guzmán. (Plaintiff did not, Musk's contact with *their families* has been widely reported, and Escobar has been dead since 1993).  As alleged in *Agrawal*, "Defendants have sought at every opportunity to deprive Plaintiffs of a full and fair opportunity to present their claims by seeking to block their efforts to obtain information supporting those claims."  Notably, Moving Defendants' instant motion is not accompanied by any declaration.  If counsel were to declare that the arguments in their motion are true under penalty of perjury, they would be committing a federal crime.

In addition, Moving Defendants have refused to provide their initial disclosures to Plaintiff in violation of Rule 26, and have further refused to discuss their refusal with Plaintiff at a conference, in violation of Rule 37 and Civil Local Rule 37-1(a).  Presumably, Moving Defendants are comfortable ignoring the legal and ethical obligations because as Shadow President, Musk intends to do away with the rule of law entirely.

It is not too late for this Court to impose consequences on Moving Defendants for these serial violations.  The Court should take the opportunity to do so before it is too late.

1

**V.    CONCLUSION**

2

3        The motion to stay discovery is meritless, contains numerous false and misleading

4  statements, and should be denied.  Moving Defendants should further be sanctioned for their

5  pervasive misconduct.

6

7  Dated: November 12, 2024          Respectfully submitted,

8

9                                    Aaron Greenspan

10                                   956 Carolina Street
                                     San Francisco, CA  94107-3337
11                                   Phone: +1 415 670 9350
                                     Fax: +1 415 373 3959
12                                   E-Mail: aaron.greenspan@plainsite.org

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I filed the foregoing PLAINTIFF'S

OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RULING

ON MOTION TO DISMISS, including attachments, using the CM/ECF system, and delivered

true and correct copies of that document to the defendants in this action not yet signed up for

CM/ECF as follows:

E-Mail
Omar Qazi
omar@smick.com
omar.qazi@me.com

Smick Enterprises, Inc.
omar@smick.com


Aaron Greenspan