IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON JACOB GREENSPAN,<br><br>Plaintiff,<br><br>v.<br><br>ELON MUSK, et al.,<br><br>Defendants. | Case No. 24-cv-04647-MMC<br><br>**ORDER RE MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 75, 77, 82 |

Before the Court are the following three motions, each filed September 30, 2024: (1) defendant X Corp.'s "Motion to Strike or, Alternatively, Dismiss Plaintiff's Claims Against X Corp. Asserted in the Amended Complaint"; (2) defendant Morgan Stanley & Company, LLC's ("Morgan Stanley") "Special Motion to Strike and Dismiss First Amended Complaint"; and (3) defendants Elon Musk ("Musk"), Tesla, Inc. ("Tesla"), the Elon Musk Revocable Trust dated July 22, 2003, Excession, LLC ("Excession"), Jared Birchall, Singer Cashman LLP, Allison Huebert ("Huebert"), Adam S. Cashman, Adam G. Mehes, and Alex Spiro's (collectively "Group 10 defendants") "Motion to Strike or, Alternatively, Dismiss Plaintiff's Claims."[1]  Plaintiff Aaron Jacob Greenspan ("Greenspan") has filed a "Corrected Plaintiff's Omnibus Opposition"[2] to which the moving

---

[1] The two remaining defendants, Omar Qazi ("Qazi") and Smick Enterprises Inc. ("Smick"), for which Greenspan alleges Qazi is the CEO (see FAC ¶ 67), have not moved to strike or dismiss the FAC.

[2] To the extent Greenspan's Motion, filed December 27, 2024, seeks "Leave to File Motion for Reconsideration of Order . . . Denying Administrative Motion for Leave to File Sur-Reply," such motion is hereby DENIED, for the reason that Greenspan has failed to identify a "material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order," the "emergence of new material facts or a change of law occurring after the time of such order," or a "manifest failure by the Court

1  defendants have separately replied.[3]

2  Having read and considered the papers filed in support of and in opposition to the

3  motions to dismiss,[4] the Court rules as follows.[5, 6, 7]

## BACKGROUND

5  In his First Amended Complaint ("FAC"), Greenspan alleges he "purchased Tesla

6  put options in his personal brokerage accounts from September 24, 2018[,] through

---

to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." See Civ. L.R. 7-9(b) (providing limited grounds upon which motion for leave may be based).

[3] Plaintiff's Administrative Motion, filed March 15, 2025, seeking "to Permanently Terminate Defendants' Legal Representation," as well as the requests therein to strike "all filings by [d]efendants and their counsel" (see id. at 2:23-25), are hereby DENIED.

[4] The Requests for Judicial Notice filed, respectively, by X Corp., Morgan Stanley, Group 10 defendants, Morgan Stanley, and Greenspan (see Doc. Nos. 76, 78, 80, 141) are hereby DENIED, as the documents submitted are not relevant to the Court's determination of the issues discussed herein. See, e.g., Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice where documents submitted were "not relevant to the resolution of [the] appeal"); McGhee v. Tesoro Refin. & Mktg. Co. LLC, 440 F. Supp. 3d 1062, 1066 n.1 (N.D. Cal. 2020) (declining to take judicial notice where "documents [were] not relevant to the Court's conclusions").

[5] To the extent Greenspan's Motion, filed December 27, 2024, seeks "Leave to File Motion for Reconsideration of Order Vacating Hearings on Defendants' Motions to Strike/Dismiss," the motion is hereby DENIED. See Civ. L.R. 7-1(b) (providing "[i]n the Judge's discretion . . . a motion may be determined without oral argument").

[6] Greenspan's Motion, filed December 5, 2024, for "Leave to File Motion for Reconsideration of Order Imposing Discovery Stay," is hereby DENIED, Greenspan having failed to make a sufficient showing for such relief, see Civ. L.R. 7-9(b), and because the facts he seeks to discover, namely, "the extent to which [d]efendants . . . coordinated with [each other] on an apparently 'intentional' basis to harass and otherwise harm [p]laintiff in retribution for his journalistic work on their activities" and "the extent to which [d]efendants . . . coordinated, simultaneous with their harassment efforts, to artificially increase the price of Tesla's stock, and exactly which trading and obfuscation mechanisms they used to accomplish that feat" (see Opp. to Motion to Impose Discovery Stay (Doc. No. 112) at 9:17-10:15), have no bearing on the Court's analysis and resolution of the issues discussed herein.

[7] Greenspan's Motion to Lift Discovery Stay, filed July 10, 2025, is, in essence, a second motion for reconsideration of the Court's order of December 2, 2024, and, as such, is hereby DENIED, Greenspan having failed to file a motion seeking leave to file said motion, see Civil L.R. 7-9(a) (providing "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion"), and, in addition, having failed to set forth sufficient grounds for such relief, see Civil L.R. 7-9(b).

March 23, 2020" (see FAC ¶ 53), and that Musk, along with the other defendants, made false statements about Tesla products, such as Autopilot, Full-Self Driving ("FSD"), and Tesla Solar, as well as about Tesla's business success and prospects, and Greenspan himself,[8] all such falsities allegedly resulting in an increase in the price of Tesla stock and his resultant loss in the amount of "at least $59,310.22 on his investment in Tesla put options" (see FAC ¶ 469).

Greenspan further alleges that Musk and others, in an effort to further silence him, engaged in "bad faith[] tactics" by submitting unfounded legal filings in litigation to which he was a party. (See FAC ¶ 621).

Lastly, Greenspan challenges the procedure under California law by which he is required to file a separate action, rather than a crossclaim, for malicious prosecution, see Babb v. Superior Court, 3 Cal. 3d 841, 846 (1971) (holding "a defendant cannot cross-complain or counterclaim for malicious prosecution in the first or main action"), and, as a result, paid a filing fee for such new complaint.

Based thereon Greenspan asserts twenty causes of action, comprising two counts alleging "Violations of Federal Civil RICO" (Counts I & II), one count alleging "Conspiracy to Violate Federal Civil RICO" (Count III), one count alleging a federal claim for "Declaratory Judgment" predicated on a violation of his Fifth Amendment rights (Count XX), and the following sixteen state law claims: three counts alleging "Securities Fraud" (Counts IV, V, & VI), two counts alleging "Defamation Per Se" (Counts IX & X), two

---

[8] See, e.g., FAC ¶¶ 90-91 (alleging Musk "spread lies to the general public" through "false and/or misleading statistics embellishing Autopilot's safety record"); FAC ¶¶ 100-102) (alleging Musk made "false promises" about the "Tesla 'robotaxi' network," how many robotaxis would be on the road, and individual Tesla owner's ability to profit from them); FAC ¶ 159 (alleging Musk conducted a "fake product demonstration" of a "'Solar Roof Tile'" that "did not work, did not really exist, and was not hooked up to the electric grid"); FAC ¶¶ 231, 234 (alleging individual Tesla vehicles were "counted as 'delivered' multiple times" to achieve "artificially high quarterly 'delivery' numbers caus[ing] [Tesla's] stock price to increase"); FAC ¶ 328 (alleging "the @tesla_truth account posted dozens of false statements—hundreds in aggregate—regarding [Greenspan], his family, and his non-profit organization[,] . . . virtually all [of which] were published to promote [d]efendant Tesla's stock, its products and [d]efendant Musk").

3

counts alleging violation of California's "Unfair Competition Law" (Counts XVII & XVIII), and one count each of "Fraud" (Count VII), "Negligent Misrepresentation" (Count VIII), "Defamation" (Count XI), violation of California's "Anti-Stalking Statute" (Count XII), "Negligent Infliction of Emotional Distress" (Count XIII), "Fraud On the Court" (Count XIV), "Professional Negligence" (Count XV), "Unjust Enrichment" (Count XVI), and "False Advertising" (Count XIX).

By the instant motions, read collectively, defendants seek, pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, dismissal of the FAC in its entirety, as well as an order striking Counts I-VI, VIII, X, XI, XIII-XV, XIX, and XX under California's anti-SLAPP statute.

The Court first addresses dismissal under Rule 8.

## DISCUSSION

**A. Rule 8**

Pursuant to Rule 8, a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," see Fed. R. Civ. P. Rule 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and alteration omitted).

Here, the sections of the FAC leading up to the twenty Counts comprise 419 paragraphs, every one of which is "incorporated by reference" in every Count. (See, e.g., FAC ¶¶ 420, 543, 687). Such a complaint, where a "plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then each count incorporates every antecedent allegation by reference," commonly referred to as a "shotgun pleading," "deprives [d]efendants of knowing exactly what they are accused of doing wrong." See Sollberger v. Wachovia Sec., LLC, No. 8:09-cv-00766-AG-AN, 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010). Shotgun pleadings, such as the one here, make it difficult to determine which alleged facts are relevant to which cause of action. See McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (finding "prolixity of

4

the complaint made it difficult to determine just what circumstances were supposed to have given rise to the various causes of action").

Although Greenspan argues that it "take[s] words to fully and accurately describe" defendants' "Matryoshka doll of multiple, nested, interdependent frauds," as well as to comply with the "greater specifity" required by Rule 9(b) (see Opp. at 3:6-7, 4:8-10), "[a] heightened pleading standard is not an invitation to disregard[ ] Rule 8's requirement of simplicity, directness, and clarity." See McHenry, 84 F.3d at 1178; see also Carrigan v. Cal. State Legislature, 263 F.2d 560, 565 (9th Cir. 1959) (holding "[w]hen fraud is alleged, it must be particularized as Rule 9(b) requires, but it still must be as short, plain, simple, concise, and direct, as is reasonable under the circumstances, and as Rules 8(a) and 8(e) require").

Nevertheless, although dismissal pursuant to Rule 8 would be proper, the Court, as set forth below, has undertaken the task of providing a more substantive resolution.

**B. Subject Matter Jurisdiction**

As noted, defendants have moved to dismiss on a number of grounds. Before considering those arguments, however, the Court first addresses the question of subject matter jurisdiction.

"Federal Courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute," Gunn v. Minton, 568 U.S. 251, 256 (2013) (internal quotations and citation omitted), and "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it," Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010). "Federal question jurisdiction extends only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." Easton v. Crossland Mortg. Corp., 114 F.3d 979, 982 (9th Cir. 1997). If "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); see also Fed. R. Civ. P. 12(h)(3) (providing "[i]f the

5

1  court determines at any time that it lacks subject-matter jurisdiction, the court must
2  dismiss the action").
3  Here, "of the two types of federal subject matter jurisdiction—diversity of
4  citizenship and federal question," see Newtok Vill. v. Patrick, 21 F.4th 608, 615 (9th
5  Cir. 2021), the parties rely exclusively on federal question jurisdiction.  In particular,
6  Greenspan, in his FAC, alleges the Court has federal question jurisdiction over his
7  RICO and Declaratory Judgment claims (see FAC ¶ 72),[9] and defendants Tesla,
8  Excession, and Huebert, in their Notice of Removal, assert "a federal question is
9  embedded" in Greenspan's state law claims alleging defamation, stalking,
10 conspiracy,[10] and violation of unfair competition law as pleaded in the original
11 complaint (see Notice of Removal ¶ 18), which pleading did not include any federal
12 claims.
13 The Court first addresses Greenspan's claims brought under federal statutes and
14 begins with the Declaratory Judgment claim (Count XX).

**1. Declaratory Judgment Claim (Count XX)**

"[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction."  Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d 1158, 1161 (9th Cir. 2005). Rather, "for federal question jurisdiction to extend to a declaratory judgment, the claim itself must present a federal question."  See Negrete, 46 F.4th at 820.  Federal question jurisdiction is lacking, however, where a claim is not "justiciable."  See Nat'l Basketball

---

[9] Greenspan also alleges the Court has jurisdiction pursuant to 28 U.S.C. §§ 1337 and 1338(a), which sections provide district courts with original jurisdiction over cases "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," see 28 U.S.C. § 1337, or "arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks," see 28 U.S.C. § 1338(a).  Neither statute is applicable here.

[10] The FAC does not include a state law conspiracy claim, and, consequently, even if a federal question were embedded therein, said claim, once deleted, provides no basis for federal jurisdiction.  See Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 44 (2025) (holding post-removal amendment deleting federal claims "deprived the District Court of federal-question jurisdiction" based thereon).

6

Ass'n v. SDC Basketball Club, Inc., 815 F.2d 562, 565 (9th Cir.1987).

"Declaratory judgment actions are justiciable if there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." NBA, 815 F.2d at 565 (internal quotation and citation omitted).

In the instant action, there is no defendant that has any legal interest in, or dispute with Greenspan as to, the filing fees he was required to pay. Accordingly, the Court lacks subject matter jurisdiction over Greenspan's declaratory judgment claim.

### 2. RICO Claims (Counts I-III)

Although the Court has federal subject matter jurisdiction over the RICO claims, see Cook Inlet Region, Inc. v. Rude, 690 F.3d 1127, 1130 (9th Cir. 2012) (holding "there is federal question jurisdiction over a federal-law claim simply by virtue of its being a claim brought under federal law"); see also Emrich v. Touche Ross & Co., 846 F.2d 1190, 1196 (9th Cir. 1988) (holding RICO claim "falls within district court's original jurisdiction"), said claims, as discussed later herein, are subject to dismissal for failure to state a claim, and, under such circumstances, the Court has discretion to dismiss any claims as to which only supplemental jurisdiction pertains. Consequently, the Court next addresses whether any of the state law claims on which defendants rely suffice to confer federal question jurisdiction.

### 3. Legal Standard: Subject Matter Jurisdiction

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). "[W]hether [a federal] issue is necessarily raised depends on if it is 'an essential element' of [the] plaintiff's claim." See Negrete v. City of Oakland, 46 F.4th 811, 819-20 (9th Cir. 2022) (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314-15 (2005)). The "mere reference of a federal statute in a pleading," however, "will not convert a state law

claim into a federal cause of action if the federal statute is not a necessary element of the state law claim." See Easton v. Crossland Mortg. Corp., 114 F.3d 979, 982 (9th Cir. 1997).

### 4. Defamation (Counts IX-XI)

The elements of a defamation claim are "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." See Taus v. Loftus, 40 Cal. 4th 683, 720 (2007) (internal quotation and citation omitted).

Here, defendants argue federal question jurisdiction exists because Greenspan alleges that one of Qazi's defamatory statements, namely, "Harvard Shut Down Aaron Greenspan's Website For Stealing Student Passwords," falsely "claimed that [Greenspan] was stealing passwords, a possible violation of 18 U.S.C. § 1030" (see FAC ¶ 512(22)), and that another, namely, "FaceCash was shut down for violating financial regulations," falsely "suggests that [Greenspan] violated 18 U.S.C. § 1960" (see FAC ¶ 512(26)).[11]

The issues raised by the above allegations do not, however, require the Court to look to either 18 U.S.C. § 1030 or 18 U.S.C. § 1960. There is no dispute as to whether the allegedly defamatory statements describe conduct constituting a violation of federal law, rather, as reflected in Greenspan's allegations, any dispute pertains to whether the events described therein ever, in fact, occurred. (See FAC ¶ 512(22) (alleging "[i]n reality the product was secure and the university did not shut it down"); see also FAC ¶ 512(26) (alleging "in fact [p]laintiff's company voluntarily shut down FaceCash *before* any violation could occur to ensure compliance with the law") (emphasis in original)). Neither such dispute involves a federal issue.

Accordingly, plaintiff's defamation claims do not raise a federal question to support

---

[11] As noted, defendants, in their Notice of Removal, rely on allegations in Greenspan's initial Complaint. The allegations in the FAC referenced herein as those on which defendants rely are in all material respects the same.

8

federal subject matter jurisdiction.

### 5. Civil Anti-Stalking Statute (Count XII)

"A person is liable for the tort of stalking" if he/she "engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff," see Cal. Civ. Code § 1708.7(a)(1), and that, "[a]s a result . . . [t]he plaintiff reasonably feared for his or her safety, or the safety an immediate family member" or "suffered substantial emotional distress, and the pattern of conduct would cause a reasonable person to suffer substantial emotional distress." See Cal. Civ. Code § 1708.7(a)(2).

Here, Greenspan alleges "defendant Qazi began following, alarming, and harassing [him] through a pattern of conduct involving his use of multiple Twitter accounts, prank telephone calls, false accusations regarding rape and possession of child pornography, and republication of deliberately altered court documents." (See FAC ¶ 544).

Defendants contend a federal question is raised by the anti-stalking claim because Greenspan alleges Qazi "attempt[ed] to intimidate him into withholding [a] document from the Court in violation 18 U.S.C. § 1512(b)." (See FAC ¶ 554). Whether such conduct is in violation of a federal statute is not, however, an element of a stalking claim. Rather, the question is whether such behavior occurred and, if it did, whether it constitutes the type of behavior covered by the anti-stalking statute.[12]

Accordingly, plaintiff's anti-stalking claim does not raise a federal question supporting federal subject matter jurisdiction.

### 6. Unfair Competition Law (Count XVII-XVIII)

California's unfair competition law ("UCL") "prohibits any unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200.

---

[12] Greenspan is precluded from bringing a federal claim asserting a violation of 18 U.S.C. 1512(b), which does not provide for a private right of action. See Rowland v. Prudential Fin., Inc., 362 Fed. App'x 596, 596-97 (9th Cir. 2010).

9

1        Here, Count XVII is predicated on Qazi's alleged unlawful conduct in defaming and
2   stalking Greenspan, and, to the extent the laws to which Greenspan cites include not only
3   California common and statutory law but also federal statutes, Greenspan's right to relief
4   is not, as discussed above, dependent in any manner on those federal statutes.

5        As to Count XVIII, defendants point out that one of the alleged unlawful
6   business practices "purportedly include[s] violating the [Federal] Trade Commission
7   Act." (See Notice of Removal ¶ 18); (see also FAC ¶¶ 673-74). Defendants cannot,
8   however, rely on a reference to the Federal Trade Commission Act, a federal statute
9   for which Congress has not provided a private right of action, to provide this Court
10  with federal question jurisdiction. See O'Donnell v. Bank of Am., Nat'l Ass'n, 504
11  Fed. App'x 566, 568 (9th Cir. 2013) (holding "district court rightly dismissed the unfair
12  competition claim [where] premised solely on [defendant's] alleged violation of the
13  Federal Trade Commission Act"; noting "the federal statute doesn't create a private
14  right of action, . . . and plaintiffs can't use California law to engineer one") (internal
15  citation omitted). Moreover, to the extent Greenspan alleges the above-referenced
16  conduct constitutes an "unfair business practice" (see FAC ¶ 671), the resolution of
17  such claim "is a question of state, not federal, law," see Donadio v. Hyundai Motor
18  Am., 751 F. Supp. 3d 1013, 1022-23 (C.D. Cal. 2024), and, consequently, any
19  alleged violation of the FTC has no bearing on that issue.

20       In sum, Greenspan's UCL claims do not raise a federal question supporting
21  federal subject matter jurisdiction.

22       **7. Conclusion: Subject Matter Jurisdiction**

23       Having found Greenspan's RICO claims are the only asserted claims giving rise to
24  federal subject matter jurisdiction, the Court next addresses those claims.

25  **C. RICO Claims: Merits**

26       "Under the Racketeer Influenced and Corrupt Organizations Act (RICO)," 18
27  U.S.C. § 1962, "a plaintiff must show (1) conduct (2) of an enterprise (3) through a
28  pattern (4) of racketeering activity." Aviva USA Corp. v. Vazirani, 632 Fed. App'x 885,

888 (9th Cir. 2015). "Racketeering activity . . . requires predicate acts," see Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014), namely, any of the acts listed in 18 U.S.C. § 1961(1), see Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000).

Here, defendants move to dismiss on the ground that the Private Securities Litigation Reform Act of 1995 ("PSLRA") bars Greenspan's RICO claims.[13]

"The Private Securities Litigation Reform Act of 1995, Pub. L. 104–67, § 107, 109 Stat. 737, 758 (Dec. 22, 1995), amended RICO so that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.'" Howard v. Am. Online Inc., 208 F.3d 741, 749 (9th Cir. 2000) (quoting 18 U.S.C. § 1964(c)).  Accordingly, a RICO claim will not lie where it is based on "any conduct that would have been actionable as securities fraud, even if pled as some other claim, such as wire fraud or mail fraud." See Allred v. Chi. Title Co., No. 19cv2129-LAB (AHG), 2020 U.S. Dist. LEXIS 182409, at *10 (S.D. Cal. Sept. 23, 2020).

Courts determining whether a defendant's alleged conduct "would have been actionable as fraud in the purchase or sale of securities," see 18 U.S.C. § 1964(c), look to "section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 to provide the basic guideposts of such an analysis." See Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong, No. C09-1786-JCC, 2014 U.S. Dist. LEXIS 33797, at *27 (W.D. Wash. Mar. 14,

---

[13] Although, defendants also move to strike the RICO claims under California's anti-SLAPP statute, such statute does not apply to federal claims. See Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010) (holding "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims).  The case on which defendants rely, Richards v. Richards (In re Richards), 655 B.R. 782 (B.A.P. 9th Cir. 2023), is readily distinguishable.  In particular, the claims therein were declaratory relief claims predicated on what the Panel found were, in essence, state law claims. See id. at 797 (rejecting debtor's "argu[ment] that her claims for declaratory relief [were] based on federal law").  Here, by contrast, the RICO claims are, without question, federal claims, and the Declaratory Judgment claim, albeit not justiciable, is based on a Fifth Amendment taking.  Accordingly, to the extent defendants bring their anti-SLAPP motions to strike Counts I, II, III, and XX, such motions are hereby DENIED.

11

2014). "Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5 make it unlawful for any person, in connection with the purchase or sale of any security: (1) to engage in fraud, (2) to make an untrue statement regarding a material fact or (3) to make a misleading statement by omitting a material fact." In re Nuvelo, Inc. Sec. Litig., 668 F. Supp. 2d 1217, 1225 (N.D. Cal. 2009) (citing 15 USC § 78j(b); 17 CFR § 240.10b–5). To satisfy the "in connection with" element, "[i]t is enough that the scheme to defraud and the sale of securities coincide." See SEC v. Zandford, 535 U.S. 813, 822 (2002).

Here, in Count I, Greenspan alleges defendants engaged in a scheme to "defraud[ ] customers and regulators of [d]efendant Musk's companies regarding 'Autopilot' and FSD software" by "spreading optimistic false narratives about [d]efendant Musk, his companies, 'Autopilot' and FSD" and "attacking critics of [d]efendant Musk, his companies, 'Autopilot' and FSD." (See FAC ¶ 434). In Count III, Greenspan alleges "[d]efendants . . . made false and/or misleading representations as to Tesla customers, regulators, courts, and the general public regarding 'Autopilot' and FSD" knowing such conduct "would cause customers and the public to lose money [and] property." (See FAC ¶ 460).[14] Although the RICO claims, as pleaded, do not refer to investors, the same allegedly false representations in the RICO counts also constitute conduct that would have been actionable as securities fraud.[15] Indeed, in pictorial form, Greenspan himself

---

[14] Count II alleges little more than an "incorporat[ion] by reference" of all earlier allegations.

[15] Although some of the asserted falsely favorable statements are alleged to have been made before Greenspan purchased the put options (see, e.g., FAC ¶¶ 79, 103), he does not, and as a practical matter cannot, bring a claim under the Securities Exchange Act or Rule 10-b(5), as he does not, and again as a practical matter cannot, allege he made such purchases in reliance thereon, in that he, as a "short seller" (see FAC ¶ 53), allegedly made those investments with the understanding that the price of Tesla stock would go down (see id.); In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 2 F.4th 1199, 1202-3 (9th Cir. 2021) (holding "[t]he elements of a Rule 10b-5 claim [include] . . . "reliance upon the misrepresentation or omission"; further holding, in "cases that allege both omissions and affirmative misrepresentations[,] . . . presumption of reliance does not apply"); see also Howard, 208 F.3d at 749 (rejecting plaintiffs' argument that section 1964(c) "d[id] not apply because they lack[ed] standing to bring securities fraud claims against [the defendant]"; holding bar applies as long as securities fraud claims could be "brought by a plaintiff with proper standing").

12

alleges that the "Full Self-Driving Fraud," "Autopilot Fraud," and "Solar Fraud" are part of defendants' larger "Stock Inflation Fraud."  (See FAC at 2:1-10) (chart depicting components of fraudulent scheme).

Consistent therewith, each RICO claim "incorporates by reference the foregoing allegations" (see FAC ¶¶ 420, 452, 458), in which the same false and misleading statements are alleged to have been made for the purpose of convincing potential investors to invest in Tesla.  (See, e.g., FAC ¶¶ 100-102 (alleging "Musk knew that his promises about robotaxis were false when he made them" at "Autonomy Investor Day" without any "'forward-looking statement' disclosures" and that such "false promises . . . formed the basis of [d]efendant Tesla's $2 billion share issuance days later"); FAC ¶ 104 (alleging similar promises were made in Tesla's "First Quarter 2019 Update filed as part of an SEC Form 8-K"); FAC ¶¶ 115, 127 (alleging defendant Tesla, for the purpose of "disseminat[ing] false and misleading marketing," used social media influencers "to create demonstration videos," which videos "were intended to both increase vehicle sales and increase Tesla's stock price"); FAC ¶ 284 (alleging defendant Tesla "cultivate[d] social media influencers and small blogs lacking journalistic standards to promote false narratives encouraging viewers to purchase the company's electric vehicles [and] stock")).

Greenspan's allegations about efforts to silence critics similarly are alleged to have been made to increase investor interest and increase stock price.  (See, e.g., FAC ¶ 328 (alleging "the @tesla_truth account posted dozens of false statements . . . regarding [p]laintiff," as well as his family and non-profit organization, "[v]irtually all [of which] were published to promote [d]efendant Tesla's stock . . ."); FAC ¶ 405 (alleging "[s]ocial media was instrumental to [d]efendants' unprecedented 'pump' of Tesla's stock price"); FAC ¶ 406 (alleging "[t]hrough thousands of false and misleading statements and material omissions broadcast directly to millions, and indirectly to millions more through the media, [d]efendants successfully and unlawfully 'pumped' the stock price of TSLA common shares")).

1          Greenspan's ability to have pled his RICO claims as securities fraud claims is
2   further demonstrated by his pleading claims titled "Securities Fraud" (see FAC Counts IV,
3   V, VI) that rely on the same misrepresentations as his RICO claims.  (See, e.g., FAC
4   ¶ 466 (alleging "[d]efendants made false statements in order to artificially raise the price
5   of Tesla stock."); FAC ¶ 476 (alleging "[d]efendants Qazi and Smick willingly assisted
6   [d]efendants Musk and Tesla with the artificial inflation of Tesla stock")).  Additionally, the
7   FAC includes a number of other claims alleging conduct actionable as securities fraud.
8   (See e.g., FAC ¶ 499 (alleging defendants made misrepresentations as to "Autopilot,"
9   FSD software, and Tesla's financial condition to investors in order to "boost sales and
10  Tesla's stock price"); FAC ¶ 501 (alleging "[i]nvestors . . . were induced by [d]efendants'
11  wrongful conduct to purchase . . . shares of Tesla stock"); FAC ¶ 507 (alleging defendant
12  Qazi made "false statements . . . with the hope that tarnishing [p]laintiff's reputation . . .
13  would increase or prevent any decrease in the value of TSLA shares")).
14          To the extent Greenspan argues his RICO claims are pled "independently" of
15  conduct actionable as securities fraud, i.e., that he broke those portions off, such
16  argument is unavailing.  See Allred v. Chi. Title Co., No. 19cv2129-LAB (AHG), 2020 WL
17  5847550, at *3 (S.D. Cal. Oct. 1, 2020) (holding "plaintiff cannot avoid the PSLRA bar by
18  relying on only some parts of an overall scheme as RICO predicate acts, and avoiding
19  those parts connected with the sale or purchase of securities"); see also Davies v.
20  GetFugu, Inc., No. CV 09-8724-GHK (RCx), 2010 WL 11597458, at *6 (C.D. Cal. Aug.
21  26, 2010) (holding if "acts of mail or wire fraud not themselves directly in connection with
22  a purchase or sale of securities nevertheless furthered an overall securities fraud
23  scheme, then a plaintiff cannot artfully plead around the PSLRA bar by carefully omitting
24  the latter from the complaint"); Ovation Fin. Holdings 2 LLC v. Chicago Title Co., No.
25  19cv2031-LAB (AHG),  2020 U.S. Dist. LEXIS 175777, at *13 (S.D. Cal. Sept. 23, 2020)
26  (holding "plaintiff cannot avoid the PSLRA bar by relying on only some parts of an overall
27  scheme as RICO predicate acts, and avoiding those parts connected with the sale or
28  purchase of securities")

14

For all the above reasons, the Court finds the RICO claims are barred by 18 U.S.C. § 1964(c), and, consequently, are subject to dismissal.[16]

Further, such dismissal will be without leave to amend, as an "amended complaint may only allege other facts consistent with the challenged pleading," see Reddy v. Litton Indus., Inc., 912 F.2d 291, 297 (9th Cir. 1990) (internal quotation and citation omitted). Here, as discussed above, Greenspan has alleged in detail that the conduct underlying his RICO claims was an integral part of a scheme to inflate Tesla's stock price, and he cannot by amendment plead facts to the contrary. See Swartz v. KPMG, LLP, 476 F.3d 756, 761 (9th Cir. 2007) (holding "it was not error to dismiss [the RICO] claim with prejudice; finding "[b]ecause the PSLRA bar would apply under any internally consistent set of facts, it would be futile to amend").

**D. Supplemental Jurisdiction**

The Court, having dismissed the claims that form the basis of its federal subject matter jurisdiction, "decline[s] to exercise supplemental jurisdiction" over the state law claims. See 28 U.S.C. § 1367(c)(3); see also Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010) (holding "[i]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims") (internal quotation and citation omitted).[17]

---

[16] Although, as noted above, defendants Qazi and Smick have not moved to dismiss, the Court's analysis and rulings herein are equally applicable to those two defendants, and, accordingly, to the extent Greenspan's claims are brought against them, such claims are subject to dismissal as well. See Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding Court has authority to "dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants").

[17] Given such ruling, defendants' anti-SLAPP motions as to Counts IV-VI, VIII, X, XI, XIII-XV, and XIX are hereby DENIED as moot. See McMillan v. Chaker, 791 Fed. App'x 666, 667 (9th Cir. 2020) (holding "it was proper for the district court to decline to address the anti-SLAPP motion" where it had "refus[ed] to exercise supplemental jurisdiction over the remaining state law claims after properly dismissing the RICO claims")

Furthermore, having declined supplemental jurisdiction over the remaining state law claims, the Court hereby DENIES the anti-SLAPP motions as to Counts IV-VI, VIII, X, XI, XIII-XV, and XIX without prejudice. See McMillan v. Chaker, 791 Fed. App'x 666, 667 (9th Cir. 2020) (holding "it was proper for the district court to decline to address the anti-SLAPP motion" where it had "refus[ed] to exercise supplemental jurisdiction over the remaining state law claims after properly dismissing the RICO claims").

## CONCLUSION

For the reasons stated:

1. Counts I-III (RICO claims) are hereby DISMISSED;
2. Count XX (Declaratory Judgment claim) is hereby DISMISSED;
3. Counts IV-XIX (state law claims) are hereby REMANDED to the Superior Court of California for the County of San Francisco.

**IT IS SO ORDERED.**

Dated: July 17, 2025

MAXINE M. CHESNEY
United States District Judge