1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Anthony P. Alden (SBN 232220)
2  anthonyalden@quinnemanuel.com
   Danielle Shrader-Frechette (SBN 300842)
3  daniellefrechette@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
4  Los Angeles, California 90017
   Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6  *Attorneys for Defendants Elon Musk, Tesla, Inc.,
   the Elon Musk Revocable Trust dated July 22,*
7  *2003, Excession, LLC, Jared Birchall, Singer
   Cashman LLP, Allison Huebert, Adam S.*
8  *Cashman, Adam G. Mehes, and Alex Spiro*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AARON GREENSPAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ELON MUSK, an individual, TESLA, INC., a Delaware corporation, THE ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, a trust, X CORP., a Nevada corporation formerly known as TWITTER, INC., EXCESSION, LLC, a Texas Limited Liability Company, JARED BIRCHALL, an individual, MORGAN STANLEY & COMPANY, LLC, a Delaware Limited Liability Company, OMAR QAZI, an individual, SMICK ENTERPRISES, INC., a Delaware corporation, SINGER CASHMAN, LLP, a California partnership, ADAM S. CASHMAN, an individual, ALLISON HUEBERT, an individual, ADAM G. MEHES, an individual, and ALEX SPIRO, an individual, and DOES 1-10, inclusive.<br><br>Defendants. | Case No. 3:24-cv-04647-MMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: September 5, 2025<br>Time: 9:00 a.m.<br>Courtroom 7<br><br>State Action Filed: June 12, 2024<br>Removed: July 31, 2024<br><br>**[Removed from Superior Court of California, County of San Francisco, Case No. CGC-24-615352]** |

Case No. 3:24-cv-04647-MMC
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................2

I.    THE COURT HAS THE AUTHORITY TO ISSUE SANCTIONS ....................................2

II.   THE RECORD DEMONSTRATES SANCTIONABLE CONDUCT AND BAD FAITH ...............................................................................................................................3

    A.    Mr. Greenspan Repeatedly Forced Defendants To Relitigate Settled Court Orders ......................................................................................................................5

    B.    Mr. Greenspan Repeatedly Forced Defendants To Litigate Issues Having No Rational Connection To His Claims ................................................................7

III.  MR. GREENSPAN'S OTHER ARGUMENTS ARE MERITLESS ....................................8

IV.  DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEYS' FEES FOR HAVING TO RESPOND TO MR. GREENSPAN'S FRIVOLOUS MOTIONS ...............11

CONCLUSION ...........................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

### Cases

*B.K.B. v. Maui Police Dep't*,
   276 F.3d 1091 (9th Cir. 2002) (abrogated on other grounds) ............................................... 3, 8

*Caputo v. Tungsten Heavy Powder, Inc.*,
   96 F.4th 1111 (9th Cir. 2024) ............................................................................................. 3

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................................................ 3

*In re Cloudera, Inc. Sec. Litig.*,
   2021 WL 2115303 (N.D. Cal. May 25, 2021) ................................................................... 6

*Four in One Co. v. S.K. Foods, L.P.*,
   2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ................................................................. 11

*Gurvey v. Legend Films, Inc.*,
   2013 WL 12090309 (S.D. Cal. Apr. 8, 2013) ................................................................ 5, 7

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
   2019 U.S. Dist. LEXIS 215668 (D. Del. Dec. 16, 2019) ................................................. 11

*McNeil v. United States*,
   508 U.S. 106 (1993) ........................................................................................................ 10

*Metabolife Intern., Inc. v. Wornick*,
   264 F. 3d 832 (9th Cir. 2001) ........................................................................................... 5

*Powers v. Wells Fargo Bank NA*,
   439 F.3d 1043 (9th Cir. 2006) ........................................................................................... 8

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) ................................................................. 11

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ...................................................................................................... 3, 9

*Romain v. Sonnier*,
   2019 WL 5810311 (E.D. La. Nov. 7, 2019) .................................................................... 12

*Sassower v. Field*,
   973 F.2d 75 (2d Cir. 1992) ............................................................................................... 3

*Transweb, LLC v. 3M Innovative Props. Co.*,
   2013 WL 11312429 (D.N.J. Sept. 24, 2013) ................................................................... 11

*TSI USA LLC v. Uber Techs., Inc.*,
    2020 WL 60208 (N.D. Cal. Jan. 6, 2020) ............................................................................... 10

*Wages v. I.R.S.*,
    915 F.2d 1230 (9th Cir. 1990) .................................................................................................. 2

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
    699 F.2d 484 (9th Cir. 1983) .................................................................................................... 2

**Statutes**

18 U.S.C. 1927 ........................................................................................................... 2, 3, 9, 12

52 U.S.C. § 10307(c) ........................................................................................................... 7

**Other Authorities**

Fed. R. Civ. Proc. 8 ................................................................................................................... 6

Fed. R. Civ. Proc. 54(d) ........................................................................................................... 9

Fed. R. Civ. Proc. 60(b) ........................................................................................................... 9

Local Rule 7-9(b) ................................................................................................................. 4-5

# INTRODUCTION

Plaintiff Aaron Greenspan's Opposition—more accurately characterized as a screed laced with baseless invective against counsel and their clients (*e.g.,* "Moving Defendants and their attorneys lie and cheat")—only confirms that sanctions are warranted. ECF No. 162. The record demonstrates that Mr. Greenspan needlessly multiplied proceedings by repeatedly litigating issues the Court had already decided and filing motions wholly unrelated to his operative complaint. As a result of Mr. Greenspan's frivolous filings, the docket had ballooned to **over 150 entries** before the Court even ruled on Defendants' motions to dismiss.

An example which typifies Mr. Greenspan's refusal to accept the Court's rulings—and the scope of his own claims—is his Motion for Temporary Restraining Order. ECF No. 95. In that motion, Mr. Greenspan asked the Court to restrain Mr. Musk's political speech concerning election matters that had no connection to the underlying litigation. *Id.* Mr. Greenspan argued that he would be irreparably harmed "if Mr. Trump were unlawfully re-elected and Defendant Musk were given any authority whatsoever on behalf of the United States government by him." *Id.* at 2. On October 22, 2024, the Court denied the motion, finding that "the injury claimed [was] unrelated to the conduct alleged in the complaint and the relief sought therein." ECF No. 99 at 1. Yet, Mr. Greenspan ignored the Court's ruling and, on March 15, 2025, filed an "Administrative Motion To Permanently Terminate Defendants' Legal Representation Due To Treasonous Conspiracy To Overturn The United States Constitution And Overthrow The Federal Government." ECF No. 147. Although his claims purportedly sound in securities fraud, defamation, negligence, and malicious prosecution, Mr. Greenspan again sought relief on the theory that "Defendant Elon Musk seeks to overturn the United States Constitution and is in the process of overthrowing the United States Government." *Id.* at 1.

Mr. Greenspan similarly disregarded the Court's rulings on discovery. On October 26, 2024, Defendants filed a Motion to Stay Discovery Pending Ruling on Motions to Dismiss. ECF No. 101. The Court granted the stay on December 2, 2024. ECF Nos. 131-132. Mr. Greenspan responded by filing a request for leave to move for reconsideration, which the Court denied. ECF No. 134. Again undeterred, and unconcerned for the rules or waste of resources, Mr. Greenspan

1  attempted to relitigate the matter for a *third time* by filing a Motion to Lift Discovery Stay. ECF
2  No. 152. On July 17, 2025, the Court rightly characterized Mr. Greenspan's motion as "in
3  essence, a second motion for reconsideration of the Court's order of December 2, 2024" and
4  denied it. ECF No. 156 at 2, n. 7.

5  Even now, Mr. Greenspan refuses to accept the Court's orders, continuing to dispute them
6  post-dismissal and remand. He believes that "judges make mistakes daily" and he should be
7  entitled to relitigate them as many times as he sees fit. ECF No. 162 at 17-18, n. 11; *see also id.* at
8  17, n. 10 ("The Court's logic also leads to the absurd result that no litigant could ever ask to lift a
9  disputed stay once imposed because to do so might constitute a Local Rule violation."); *id.* at 14
10 ("Plaintiff respectfully disagrees with the Court's assessment in ECF No. 138, and explained in
11 ECF No. 140 why a sur-reply was entirely appropriate given that Moving Defendants also raised
12 new issues on reply, which Plaintiff even explicitly identified as such."); *id.* at 11 ("[T]he Court,
13 perhaps unaware of the full factual landscape surrounding Musk since Moving Defendants worked
14 hard to conceal it, was simply incorrect in its analysis at the time.").

15 Mr. Greenspan does not deny that he is a highly experienced litigant. Yet rather than
16 adhere to the rules and orders of the Court, he employed vexatious tactics to reargue settled issues,
17 forcing Defendants to spend tens of thousands of dollars in unnecessary legal fees. His continued
18 refusal to accept the Court's prior orders and adhere to local rules underscores the likelihood that
19 he will deploy the same tactics as he pursues his remanded claims in state court. Defendants are
20 entitled to be compensated for the significant, unnecessary burden Mr. Greenspan has imposed
21 upon them, and Mr. Greenspan must be deterred from replicating the same misconduct in future
22 proceedings. Sanctions are both appropriate and necessary.

23                                    **ARGUMENT**
24 **I.    THE COURT HAS THE AUTHORITY TO ISSUE SANCTIONS**
25 Mr. Greenspan's core argument—that 28 U.S.C. § 1927 does not apply to *pro se* non-
26 attorneys—is squarely foreclosed by controlling precedent. In *Wages v. I.R.S.*, 915 F.2d 1230,
27 1235-36 (9th Cir. 1990), the Ninth Circuit held that "Section 1927 sanctions may be imposed upon
28 a *pro se* plaintiff." *See also Wood v. Santa Barbara Chamber of Commerce, Inc.,* 699 F.2d 484,

-2-   Case No. 3:24-cv-04647-MMC
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

485-86 (9th Cir. 1983).  Mr. Greenspan cites no Ninth Circuit authority to the contrary, and his reliance on *Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992) is misplaced.  Not only is *Sassower* nonbinding, but it acknowledges that "the Ninth Circuit has adopted [the] position" that Section 1927 applies to non-lawyer *pro se* litigants.  *Id.* at 80.  Regardless, Mr. Greenspan does not dispute that the Court may exercise its inherent authority to sanction the type of litigation abuse he engaged in here.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (authority reaches "a full range of litigation abuses," including conduct that is "vexatious, wantonly, or for oppressive reasons").

## II. THE RECORD DEMONSTRATES SANCTIONABLE CONDUCT AND BAD FAITH

Under either Section 1927 or the Court's inherent authority, a court may award sanctions upon a finding of "bad faith."  *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1148, 1153 (9th Cir. 2024).  Sanctions are warranted under Section 1927 and the Court's inherent authority where a party "knowingly or recklessly raises a *frivolous* argument" or engages in conduct that "multiplies the proceedings … unreasonably and vexatiously."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (abrogated on other grounds).  The Ninth Circuit has explained that one "multiplies the proceedings" by "allowing [a] frivolous argument to be made in the first instance and then repeat[ing] it to … federal judges throughout [court] proceedings."  *Caputo*, 96 F.4th at 1153.  Contrary to Mr. Greenspan's assertions, Defendants do not seek sanctions with respect to any motions Mr. Greenspan filed solely against Defendant Omar Qazi.[1]  Rather, Defendants seek sanctions with respect to only the following motions:

---

[1] Defendants included Mr. Greenspan's motions against Mr. Qazi in the overall tally to illustrate the full scope of Mr. Greenspan's vexatious litigation campaign—over a dozen motions before any ruling on motions to dismiss.  As parties to this action, Defendants were required to monitor and review all filings, including those targeting co-Defendants, to understand the evolving claims and potential impact on the case.  The sheer volume of filings, regardless of their target, demonstrates the unreasonable multiplication of proceedings that characterized this litigation.

- ECF No. 95 - An Emergency Motion for Temporary Restraining Order and Permanent Injunction Against Defendant Elon Musk, seeking to enjoin political speech unrelated to the litigation;
- ECF No. 100 - An Emergency Motion for Leave to File Second Amended Complaint, or in the Alternative, Stay the Case, filed without merit, then withdrawn only after full briefing by Defendants;
- ECF No. 125 - An Administrative Motion for Leave to File Sur-Reply in Opposition to Motions to Dismiss and Special Motions to Strike, which the Court characterized as "an unauthorized 'Reply'" before denying it;
- ECF No. 134 - A Motion for Leave to File Motion for Reconsideration of Order Imposing Discovery Stay, filed in violation of Local Rule 7-9(b);
- ECF No. 140 - A Motion for Leave to File Motion for Reconsideration of Order Vacating Hearings on Defendants' Motions to Strike/Dismiss and Denying Administrative Motion for Leave to File Sur-Reply, which *again* asked for leave to file a sur-reply;
- ECF No. 141 - A Request for Judicial Notice in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss and Special Motions to Strike Plaintiff's First Amended Complaint, filed two months after briefing closed for the apparent purpose of injecting irrelevant information into the record;
- ECF No. 147 - An Administrative Motion to Permanently Terminate Defendants' Legal Representation Due to Treasonous Conspiracy to Overturn the United States Constitution and Overthrow the Federal Government, accusing defense counsel of participation in a "treasonous conspiracy" with foreign adversaries; and
- ECF No. 152 - A Motion to Lift Discovery Stay (Mr. Greenspan's second attempt), filed after the Court had already denied leave to seek reconsideration.

Mr. Greenspan's conduct in filing these motions and requests (referred to collectively herein as the "Frivolous Motions") plainly satisfies—and exceeds—the standard for sanctions.

### A. Mr. Greenspan Repeatedly Forced Defendants To Relitigate Settled Court Orders

Mr. Greenspan's filings were a vexatious attempt to relitigate matters already resolved by this Court, seeking identical relief based on arguments previously rejected. His Opposition does not rebut this; it confirms it. As explained in *Gurvey v. Legend Films, Inc.*, 2013 WL 12090309, at *5 (S.D. Cal. Apr. 8, 2013), bad faith is evident where a party "knowingly advances the same frivolous and wholly unsupported arguments and seeks the same remedies as [their previous] motion."

#### 1. Mr. Greenspan's Repeated And Frivolous Attempts To Lift The Discovery Stay

On October 26, 2024, Defendants filed a Motion to Stay Discovery Pending Ruling on Motions to Dismiss (ECF No. 101), which the Court granted on December 2, 2024. ECF Nos. 131-132. The basis for the Court's ruling was that Defendants' pending motions to dismiss were "potentially dispositive of the entire case" and that "no discovery is required to respond to [Defendants'] challenge." ECF No. 132 at 2. Mr. Greenspan responded by seeking leave to file a motion for reconsideration (ECF No. 134), which the Court denied (ECF No. 156 at 2, n. 6). Mr. Greenspan defends this motion by claiming that Defendants' arguments were "hypocritical" and "manufactured." ECF No. 162 at 14-15. But Mr. Greenspan's motion made no attempt to satisfy any of the elements under Local Rule 7-9(b). ECF No. 134. He simply disagreed with the Court's decision. *See id.* at 1 ("Respectfully, Defendants have tricked the Court into granting a discovery stay that it absolutely should not have, and the Court's Order should be reversed in whole or in part."). Indeed, the Court ultimately denied the motion for the very reason Defendants argued the stay should be entered. ECF No. 156 at 2, n. 6 ("[T]he facts he [i.e., Mr. Greenspan] seeks to discover . . . have no bearing on the Court's analysis and resolution of the issues discussed herein.").

Even worse, Mr. Greenspan then attempted to relitigate the matter *for a third time* through a Motion to Lift Discovery Stay. ECF No. 152. Mr. Greenspan's only basis was one decision (*Metabolife Intern., Inc. v. Wornick*, 264 F. 3d 832 (9th Cir. 2001)) from over a decade before Mr.

1  Greenspan either opposed Defendants' Motion for a Stay or sought reconsideration, and which
2  Mr. Greenspan himself failed to bring to the Court's attention.  Moreover, the case is irrelevant
3  because here, unlike in *Metabolife*, Defendants' pending motions were dispositive of the entire
4  case due to Mr. Greenspan's own deficient "shotgun pleading."  The Court rightly deemed Mr.
5  Greenspan's motion an unauthorized "second motion for reconsideration" and denied it.  ECF No.
6  156 at 2, n. 7.

7  Mr. Greenspan's serial attempts to relitigate the discovery stay—first opposing the original
8  motion (ECF No. 112), then seeking reconsideration (ECF No. 134), then filing an unauthorized
9  second bite at the apple (ECF No. 152)—demonstrate his refusal to accept adverse rulings and
10  caused Defendants to waste significant time and resources on a straightforward issue.

2.  <u>Mr. Greenspan's Repeated Attempts To Get The Last Word In Opposition To Defendants' Motions To Dismiss Or Strike</u>

13  On November 25, 2024, Mr. Greenspan filed an Administrative Motion for Leave to File
14  Sur-Reply Regarding Motion to Strike and Motion to Dismiss.  ECF No. 125.  This motion was
15  simply an attempt to relitigate issues Mr. Greenspan had ample opportunity to address in his
16  previous opposition, including his failure to meet the requirements of Rule 8.  *Id.*  The Court
17  characterized it as "an unauthorized 'Reply'" and denied it.  ECF No. 138 at 1, n. 1.  Mr.
18  Greenspan now argues that he "disagrees with the Court's assessment" because a sur-reply was
19  necessary to address a "new argument."  ECF No. 162 at 14.  However, in rejecting Mr.
20  Greenspan's motion, the Court already considered that "[a] sur-reply is appropriate where
21  defendants have raised a new argument or evidence in a reply brief."  ECF No. 138 (quoting *In re*
22  *Cloudera, Inc. Sec. Litig.*, 2021 WL 2115303, at *8 n.2 (N.D. Cal. May 25, 2021)).  Mr.
23  Greenspan is simply wrong and refuses to accept any explanation from the Court telling him
24  otherwise.

25  On December 27, 2024, Mr. Greenspan again sought to litigate the issue, seeking leave to
26  file a Motion for Reconsideration.  ECF No. 140.  The Court declined to grant leave, correctly
27  identifying this as another iteration of the same improper, unauthorized sur-reply—advancing
28  identical arguments that the Court had already rejected.  As one court noted in a similar context,

such filings merely "advance[] the same frivolous and wholly unsupported arguments and seek[] the same remedies" as prior motions. *Gurvey v. Legend Films, Inc.*, 2013 WL 12090309, at *5. Nevertheless, Mr. Greenspan defends this filing in his Opposition by once again asserting that a new issue warranted an additional brief. ECF No. 162 at 14. This argument is both circular and unpersuasive.

Refusing to take two noes for an answer, on January 15, 2025, Mr. Greenspan filed a Request for Judicial Notice in Opposition to Defendants' Motions to Dismiss nearly *two months* after briefing on the Motion to Dismiss had closed and without leave of the Court. ECF No. 141. Transparently attempting to circumvent the Court's prior rulings denying him a sur-reply, Mr. Greenspan submitted various self-serving online news articles and editorializations to get the "last word" the Court had already denied him. Defendants were required to spend time and money responding to these submissions as a result of Mr. Greenspan's persistent refusal to accept the Court's rulings.

### B. Mr. Greenspan Repeatedly Forced Defendants To Litigate Issues Having No Rational Connection To His Claims

On October 19, 2024, Mr. Greenspan filed a Motion for Temporary Restraining Order ("TRO") in which he asked the Court to restrain Mr. Musk's political speech on election-related issues. ECF No. 95. Specifically, Mr. Greenspan sought to prohibit Mr. Musk "from violating 52 U.S.C. § 10307(c) by buying votes, offering lottery prizes for votes, or otherwise interfering with the voting preferences of any individual, and is further ordered to seek the return of any funds already paid to any voters." ECF No. 95-2 at 1. But Mr. Greenspan's claims had nothing to do with election interference or even his right to vote. On October 22, 2024, the Court denied the motion, finding that "the injury claimed [was] unrelated to the conduct alleged in the complaint and the relief sought therein." ECF No. 99 at 1.

Mr. Greenspan justifies his TRO application by citing a "reliable" tip that Mr. Musk "was about to be indicted," which he claims would have been helpful to his case. ECF No. 162 at 10. Mr. Greenspan thus felt justified in seeking to enjoin Mr. Musk from allegedly violating 52 U.S.C. § 10307(c) because, if Mr. Trump were elected President through Mr. Musk's efforts, the

unsubstantiated impending indictment might not occur, and Mr. Greenspan's case would not be benefited.  This type of baseless filing, resting on rank speculation and multiple leaps of logic is a textbook example of bad-faith litigation.  *See B.K.B.,* 276 F.3d at 1107-08.  If such a standard were accepted, every RICO plaintiff could waste the Court's and parties' time by seeking extraordinary relief on nothing more than a hunch.  That is not the law.  *See Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1046 (9th Cir. 2006) (ordering dismissal of RICO claims against defendants not criminally convicted).

Even worse, on March 15, 2025, Mr. Greenspan filed an "Administrative Motion To Permanently Terminate Defendants' Legal Representation Due To Treasonous Conspiracy To Overturn The United States Constitution And Overthrow The Federal Government."  ECF No. 147.  Seeking to disqualify defense counsel and strike every one of their submissions, the motion advanced the same conspiratory theories the Court previously found were unrelated to Mr. Greenspan's claims.  ECF No. 99 at 1.  Indeed, Mr. Greenspan's Opposition openly admits this motion was about "treasonous conspiracy to re-install a Russian asset in the White House."  ECF 162 at 16.  His only other defense is that this filing was procedurally allowable, which does *not* render it non-frivolous.  *See B.K.B.,* 276 F.3d at 1107.  Having already been told by the Court that his conspiracy theories about Mr. Musk had nothing to do with his claims, Mr. Greenspan kept going, forcing Defendants to keep responding to his frivolous and extraneous allegations.[2]

### III.  MR. GREENSPAN'S OTHER ARGUMENTS ARE MERITLESS

Faced with a clear record of vexatious and frivolous motions, Mr. Greenspan attempts to distract by leveling baseless *ad hominem* attacks on Defendants and their counsel and mischaracterizing the law and facts.[3]  Each of his scattershot arguments can be easily dispatched.

---

[2]  Mr. Greenspan speculates that the other Defendants' decision not to join this Motion reflects their evaluation of its merits.  A more likely explanation is that the other Defendants did not face as many frivolous motions as the moving Defendants.

[3]  Mr. Greenspan's assertion that the caption is "misleading" because it uses the word "Defendants" rather than the names of each of the 10 moving Defendants—even though those names plainly appear in the Notice of Motion and Motion—is emblematic of his desperate attempts to sling mud to distract.

*First*, Mr. Greenspan conflates Federal Rules of Civil Procedure 54(d) and Rule 60(b) with sanctions under Section 1927 and the Court's inherent authority. This Motion seeks sanctions for litigation misconduct, *not* taxable costs or relief from judgment. Section 1927 sanctions are penalties for misconduct and do not depend on prevailing-party status. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980). Whether or not Defendants prevailed is thus irrelevant to this Motion, and Defendants have never stated otherwise.

*Second*, Mr. Greenspan argues that this Motion is "effectively a request for reconsideration of Moving Defendants' failed anti-SLAPP motion, ECF No. 82, which was denied on July 17, 2025, as well as of arguments already raised in Moving Defendants' ECF No. 104, which this Court also declined to adopt." ECF No. 162 at 5-6. But the present Motion makes none of the arguments in Defendants' anti-SLAPP motion or opposition to Plaintiff's motion to dismiss or stay. This Motion is about Mr. Greenspan's abusive litigation tactics, not the merits of his claims. And regardless, having declined to exercise supplemental jurisdiction over Mr. Greenspan's state law claims, the Court did not rule on Defendants' request for fees in their anti-SLAPP motion so there is nothing for the Court to re-consider.

*Third*, as explained in the concurrently filed Declaration of Anthony P. Alden ("Alden Suppl. Decl."), Mr. Greenspan's assertion that Defendants failed to meet and confer is false. As Mr. Greenspan himself admits, counsel emailed Mr. Greenspan inviting a meet and confer over the telephone and they spoke the same day. Counsel explained the basis of the Motion to Mr. Greenspan—*i.e.*, that he had unnecessarily multiplied proceedings by filing frivolous motions. When Mr. Greenspan disputed that Defendants were the prevailing party, counsel clarified that the Motion would be brought under Section 1927 and the Court's inherent authority, which do not turn on which party prevailed. When Mr. Greenspan asked for one example of a frivolous motion, counsel identified one, even though Mr. Greenspan is obviously well aware of every motion he filed. In response to counsel's query as to whether Mr. Greenspan would agree to pay any portion of Defendants' fees, Mr. Greenspan declined. The notion that further discussion would have "potentially narrow[ed] the scope of this motion" (ECF No. 162 at 7) is thus absurd, especially in

light of Mr. Greenspan's attempt to challenge the Court's order requiring him to pay just $160 in service fees.  ECF No. 68.

*Fourth*, the claim that this is Defendants' "tenth attempt" to obtain fees is fiction.  The moving Defendants have never before sought attorneys' fees against Mr. Greenspan other than in their two anti-SLAPP motions—one of which was mooted.  Defendants were perfectly entitled to avail themselves of the remedy expressly enacted by the California Legislature for parties who prevail on anti-SLAPP motion.  To the extent Mr. Greenspan has a problem with California's anti-SLAPP law, his ire should be directed at the California Legislature, not Defendants.

In sum, the record reveals a serial litigant systematically abusing the judicial process.  Mr. Greenspan has filed at least seven complaints against Tesla and Mr. Musk despite never having purchased Tesla vehicle or stock.  ECF No. 161 at 2.  He operates a legal research website—demonstrating familiarity with legal procedures—yet repeatedly violates court rules and filing requirements. This pattern constitutes precisely the type of vexatious litigation that warrants sanctions. The Supreme Court has definitively held that procedural rules apply equally to all litigants: courts should not interpret rules "to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  *Pro se* status provides no immunity from sanctions for litigation misconduct.  A litigant's choice to proceed without counsel does not license the multiplication of proceedings through frivolous filings.[4]

## IV.     DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEYS' FEES FOR HAVING TO RESPOND TO MR. GREENSPAN'S FRIVOLOUS MOTIONS

Defendants seek $63,464.40 in attorneys' fees they have incurred responding to the seven Frivolous Motions.  *See* Alden Suppl. Decl., Ex. A.  This amount is based on contemporaneous electronic billing records generated by Defendants' counsel.  The billing records identify, by date

---

[4]  Mr. Greenspan notes that Defendants did not previously provide the billing details submitted with this filing.  The billing records took significant time to compile and review.  Courts allow parties who prevail on a motion for sanctions to supplement their billing records as needed even *after* a ruling on the motion.  *See, e.g.*, *TSI USA LLC v. Uber Techs., Inc*., 2020 WL 60208, at *4 (N.D. Cal. Jan. 6, 2020).

1  and in tenth-of-an-hour increments, the time each attorney spent responding to the Frivolous

2  Motions, along with detailed descriptions of the work performed. Defendants have applied the

3  same hourly rates previously disclosed in their opening memorandum, as detailed in the

4  spreadsheet submitted as Exhibit A to Mr. Alden's accompanying supplemental declaration. ECF

5  No. 161-1. This breakdown specifies the number of hours each attorney devoted to addressing

6  each Frivolous Motion. Alden Suppl. Decl., Ex. A.

7  While it is highly likely that Defendants incurred more than $63,464.40 in attorneys' fees

8  responding to the Frivolous Motions, Defendants included amounts in the calculation only where

9  the billing record *expressly and clearly* identified the time as attributable to responding to a

10  Frivolous Motion. If a time entry raised any ambiguity, Defendants excluded it from the

11  calculation. Defendants have also only included time devoted to the Frivolous Motions by

12  attorneys, rather than paralegals or other staff whose time was billed.

13  Mr. Greenspan's objection to the rates charged by Quinn Emanuel (ECF No. 162 at 18-19)

14  is meritless. Courts across the country, including in this district, have repeatedly found Quinn

15  Emanuel's rates reasonable given the firm's experience, reputation, and results. *See Proofpoint,*

16  *Inc. v. Vade Secure, Inc.*, 2020 WL 7398791, at *3 (N.D. Cal. Dec. 17, 2020) (finding Quinn

17  Emanuel attorneys "are experienced and seasoned practitioners" at "a large international firm with

18  a highly regarded reputation" and that the firm's fees are reasonable); *Transweb, LLC v. 3M*

19  *Innovative Props. Co.*, 2013 WL 11312429, at *14 (D.N.J. Sept. 24, 2013) (Special Master finding

20  Quinn Emanuel a "premier litigation firm" and $26 million in fees reasonable); *Four in One Co. v.*

21  *S.K. Foods, L.P.*, 2014 WL 4078232, at *12 (E.D. Cal. Aug. 14, 2014) (finding Quinn Emanuel's

22  fees of $1.6 million reasonable). Multiple other courts have reached the same conclusion. *See,*

23  *e.g.*, *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2019 U.S. Dist. LEXIS 215668, at *25-28 (D. Del. Dec. 16,

24  2019); *Romain v. Sonnier*, 2019 WL 5810311, at *5-6 (E.D. La. Nov. 7, 2019). $63,464.40 to

25  respond to eight motions is more than reasonable and would, in fact, only partially compensate

26  Defendants for the amount spent responding to the Frivolous Motions.

27

28

**CONCLUSION**

Mr. Greenspan's Opposition—laden with unfounded accusations and conspiratorial claims—only reinforces the need for sanctions. His filings are not zealous advocacy; they are a sustained campaign of vexatious litigation, characterized by frivolous motions, disregard for court rules, and open contempt for opposing counsel and the judiciary. This is precisely the type of conduct that Section 1927 and the Court's inherent authority are designed to address. The Court should grant the Motion and order Greenspan to pay the reasonable attorneys' fees and costs incurred as a result of his misconduct.

DATED: August 21, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Danielle Shrader-Frechette
Anthony P. Alden (Bar No. 232220)
anthonyalden@quinnemanuel.com
Danielle Shrader-Frechette (Bar No. 300842)
daniellefrechette@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443 3000
Facsimile:    (213) 443 3100

*Attorneys for Defendants Elon Musk, Tesla, Inc., the Elon Musk Revocable Trust dated July 22, 2003, Excession, LLC, Jared Birchall, Singer Cashman LLP, Allison Huebert, Adam S. Cashman, Adam G. Mehes, and Alex Spiro*